ACCEPTED
06-14-00143-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/19/2015 9:30:48 AM
DEBBIE AUTREY
CLERK

## CAUSE NO. 06-14-00143-CR

## IN THE SIXTH COURT OF APPEALS

## TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
2/19/2015 9:30:48 AM
DEBBIE AUTREY
Clerk

_____

**CHRISTOPHER VUJOVICH**

Appellant

**VS.**

**THE STATE OF TEXAS**

Appellee

_____

On Appeal from Cause No. 2013F00484 in the
5th Judicial District Court of Cass County, Texas

_____

## BRIEF OF APPELLEE

_____

Respectfully submitted,

Courtney H. Shelton
Cass Co. Asst. Criminal District Attorney
Texas Bar No. 24043354
Post Office Box 839
Linden, Texas 75563
Telephone: 903.756.7541
Facsimile: 903.756.3210

Attorney for Appellee,
The State of Texas

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to the Texas Rules of Appellate Procedure Rule 38.1(a), the following list is a complete list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

1.  Hon. Donald Dowd - Judge, County Court at Law, Sitting for the 5th Judicial District Court, Cass County, Texas

2.  Christopher Vujovich - Appellant

3.  Mr. Edwin E. Buckner - Appellant's trial & appellate counsel
    P.O. Box 629
    Linden, Texas  75563

4.  Mrs. Courtney H. Shelton - Appellee's trial & appellate counsel
    Cass County Assistant District Attorney
    Post Office Box 839
    Linden, Texas 75563

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

Statement of Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-22

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23-25

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-36

**Issue 1:** The evidence introduced at trial was legally sufficient to establish that Appellant was intoxicated at the time he operated a motor vehicle, thereby supporting the jury's guilty verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**Issue 2:** Appellant expressly consented to a blood draw, therefore, the Court was proper in denying Appellant's Motion to Suppress the blood draw . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

**Issue 3:** The jury may be informed of an Appellant's stipulations to two prior DWI convictions, as proof of those priors is a jurisdictional element of the offense . . . . . . . . . . . . . . . . . . 32

**Issue 4:** Appellant failed to argue any basis for the admissibility of the excluded "interpretation of diagnosis," therefore, he has not preserved this issue for review . . . . . . . . . . . . . . . . . . . . . . . 34

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## INDEX OF AUTHORITIES

**CASES**                                                                                        **PAGE**

*Acosta v. State,*
    429 S.W.3d 621 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Adames v. State,*
    353 S.W.3d 854 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Barfield v. State,*
    63 S.W.3d 446 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . 24, 34

*Basham v. State,*
    608 S.W.2d 677 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . . . . 24, 34-35

*Brooks v. State,*
    323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Carmouche v. State,*
    10 S.W.3d 323 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Farmer v. State,*
    411 S.W.3d 901 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . 26-27

*Frierson v. State,*
    839 S.W.2d 841 (Tex. App.—Dallas 1992, pet ref'd.) . . . . . . . . . . . . . . . 30

*Fuller v. State,*
    827 S.W.2d 919 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Hollen v. State,*
    117 S.W.3d 798 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . 24, 33-34

*Jackson v. Virginia,*
    443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Johnson v. State,*
    68 S.W.3d 644 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . 23, 29-30

*Johnson v. State,*
    414 S.W.3d 184 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . 23, 30

*Lackey v. State,*
638 S.W.2d 439 (Tex. Crim. App 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Malik v. State,*
953 S.W.2d 234 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Martinez v. State,*
348 S.W.3d 919 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . 23, 29-30

*Maxwell v. State,*
73 S.W.3d 278 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ray v. State,*
178 S.W.3d 833 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Reasor v. State,*
12 S.W.3d 813 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . 23, 30

*Reyna v. State,*
168 S.W.3d 173 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . 25, 35

*Rodriguez v. State,*
749 S.W.2d 576 (Tex. App.—Corpus Christi 1988, pet ref'd) . . . . . . . . 35

*Schneckloth v. Bustamonte,*
412 U.S.218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*State v. Ross,*
32 S.W.3d 853 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*State v. $ 217,590.00 in United States Currency,*
18 S.W.3d 631 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24, 30

*Tamez v. State,*
11 S.W.3d 198 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . 24, 34

*Willover v. State,*
70 S.W.3d 841 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## STATUTES

TEX. PEN. CODE § 49.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 34-35

TEX. R. APP. P. 44.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

TEX R. EVID. 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 34-35

**CAUSE NO. 06-14-00143-CR**

**IN THE SIXTH COURT OF APPEALS**

**TEXARKANA, TEXAS**

_____

**CHRISTOPHER VUJOVICH**

Appellant

**VS.**

**THE STATE OF TEXAS**

Appellee

_____

On Appeal from Cause No. 2013F00484 in the
5th Judicial District Court of Cass County, Texas

_____

**BRIEF OF APPELLEE**

**TO THE HONORABLE JUSTICES OF THE SIXTH COURT OF APPEALS:**

**COMES NOW THE STATE OF TEXAS,** Appellee in the above-entitled and numbered cause, and submits this brief of authorities and arguments, and in support thereof Appellee would respectfully show the Court as follows:

## STATEMENT OF THE CASE

Appellant, Christopher Vujovich, was charged by Indictment with the third degree felony offense of Driving While Intoxicated – Subsequent Offense that occurred on or about August 14, 2012.  (C.R. pg. 5).

Prior to trial on the merits, Appellant filed a Motion to Suppress the Blood Analysis, arguing that any consent provided by Appellant "was ineffective and invalid due to the intoxication of Defendant at the time of said alleged consent." (C.R. pgs. 31-35).  A hearing was held on Appellant's Motion to Suppress on July 28, 2014.  (R.R. Vol. 2, pgs. 15-46).  The Court found by clear and convincing evidence based on a totality of the circumstances that "there was actual consent to the blood draw," and subsequently denied Appellant's Motion to Suppress. (R.R. Vol. 2, pg.46).

A trial on the merits commenced on or about July 29, 2014, in the 5th Judicial District Court of Cass County, Texas.  A jury was selected, empaneled and sworn.  (R.R. Vol. 3, pgs. 9-91).  Appellant was arraigned in the presence of the jury and entered a plea of "not guilty." (R.R. Vol. 3, pgs. 95-96).  The State presented its case-in-chief and rested on July 29, 2014. (R.R. Vol.3. pgs. 100-192).  The defense presented its case-in-chief and rested and closed on July 30, 2014. (R.R. Vol. 4, pgs. 6-53).  The Court's charge was read to the jury on July 30, 2014. (R.R. Vol.4, pgs. 56-63).  Closing arguments were presented by both the State and the defense, after which the jury retired to deliberate.  (R.R. Vol. 4,

pgs. 63-76).   The jury returned after 38 minutes of deliberation with a "guilty" verdict.  (R.R. Vol. 4, pg. 77).

Appellant had previously elected for the judge to assess punishment in the event of conviction. (C.R. pg. 40).  On July 30, 2014, the State and the defense both presented punishment evidence and arguments to the Court.  (R.R. Vol. 4, pgs. 80-180).   After presentation of all the evidence and closing arguments, Judge Donald Dowd pronounced sentence at four (4) years confinement in the Institutional Division of the Texas Department of Criminal Justice.  (R.R. Vol. 4, pgs. 180-185).

## STATEMENT OF ORAL ARGUMENT

Oral argument may assist the Court in determining why the trial court did not abuse its discretion in admitting the blood analysis and excluding Dr. Gregory Atchison's report.

## ISSUES PRESENTED

**Issue 1:** The evidence introduced at trial was legally sufficient to establish that Appellant was intoxicated at the time he operated a motor vehicle, thereby supporting the jury's guilty verdict.

**Issue 2:** Appellant expressly consented to a blood draw, therefore, the trial court did not abuse its discretion in denying Appellant's Motion to Suppress Blood Analysis.

**Issue 3:** The jury may be informed of an Appellant's stipulations to two prior DWI convictions, as proof of those priors is a jurisdictional element of the offense.

**Issue 4:** Appellant failed to argue any basis for the admissibility of the excluded "interpretation of diagnosis," therefore, he has not preserved this issue for review.

## STATEMENT OF THE FACTS

In December 2013, a Cass County grand jury returned an indictment charging Appellant with Driving While Intoxicated – Subsequent Offense. (C.R. pg. 5). *See* TEX. PEN. CODE § 49.04.

At a pretrial hearing on Appellant's Motion to Suppress, Trooper Wayne Johnson testified that he was called to assist Trooper Eric White with a possible intoxication investigation. (R.R. Vol. 2, pg. 19). Johnson responded to Atlanta Memorial Hospital and met with the subject, later identified as Appellant, involved in the crash. (R.R. Vol. 2, pg. 19). Johnson and Appellant conversed about where Appellant was travelling, how the crash occurred, and what medications he had taken. (R.R. Vol. 2, pgs. 22-23). Johnson then commenced field sobriety testing. (R.R. Vol. 2, pgs. 23-29). Appellant was again questioned about any medications he had taken, and Appellant admitted to taking Ambien, Wellbutrin, and Lexapro. (R.R. Vol. 2, pg. 29). Johnson explained to Appellant that medications could cause a person to become intoxicated, to which Appellant agreed. (R.R. Vol. 2, pg. 29-30). At that point, Johnson advised Appellant of his DIC-24 Statutory Warning and requested a sample of his blood. (R.R. Vol. 2, pg. 30). Initially, Appellant stated he would give a urine sample. (R.R. Vol. 2, pg. 31). Johnson advised he was asking for a blood sample, and Appellant stated he would give a blood sample. (R.R. Vol. 2, pg. 31). Furthermore, Appellant was given a consent form, which was explained to him, and which he signed,

-12-

consenting to give a blood sample. (R.R. Vol. 2, pg. 31, State's Exhibit 1). At no point did Appellant withdraw consent, and there was no resistance from Appellant. (R.R. Vol. 2, pg. 32). Appellant testified that he remembered taking a blood test, but he did not remember signing for anything. (R.R. Vol. 2, pg. 42). The Court found by clear and convincing evidence based on a totality of the circumstances that "there was actual consent to the blood draw in this case, that was positive and unequivocal and obtained without duress or collusion, actual or implied," and subsequently denied Appellant's Motion to Suppress. (R.R. Vol. 2, pg.46).

On July 29, 2014, the State arraigned Appellant in the presence of the jury, which included reading that Appellant had been previously convicted on two occasions of offenses relating to the operating of a motor vehicle while intoxicated. (R.R. Vol. 3, pgs. 95-96).

Joseph Melder testified that on August 14, 2012, between 6:00 and 6:20 a.m., he was headed to International Paper, via FM 3129 from Highway 77 South. (R.R. Vol. 3, pgs 102-103). A two-door, dark colored car turned onto FM 3129 in front of Melder, heading northbound towards Bloomburg. (R.R. Vol. 3, pgs. 103-104). The car swerved a couple of times, and then veered off the road to the left down into a creek. (R.R. Vol. 3, pg. 104). Melder called 911. (R.R. Vol. 3, pg. 105). Another motorist arrived who agreed to stay with Appellant, and Melder went on to work. (R.R. Vol. 3, pg. 105).

Trooper Eric White testified that on August 14, 2012, he was employed as a trooper with the Texas Department of Public Safety. (R.R. Vol. 3, pg. 110). At 6:04 a.m., he was dispatched to a car crash on FM 3129, near County Road 4795, south of Bloomburg. (R.R. Vol. 3, pgs. 110-111). Upon arrival, Christopher Alexander Vujovich, Appellant, identified himself as the driver of the vehicle. (R.R. Vol. 3, pg. 114). Appellant first advised Trooper White that he was headed to school at Texas A&M University in Texarkana. (R.R. Vol. 3, pg. 112). He later told Trooper White that he was headed to Caver Construction, which was located just south of the Butler's Inn on Highway 59 in Atlanta. (R.R. Vol. 3, pg. 113). Either way, Trooper White testified, based on the fact that Appellant lived on Highway 43 in Atlanta, there was no reason for Appellant to be on FM 3129. (R.R. Vol. 3, pgs. 112-113). It was not on either route. (R.R. Vol. 3, pgs. 112-113). When questioned about the events leading to the crash, Appellant stated there was a lot of traffic and "cars were jockeying for position." (R.R. Vol. 3, pg. 115). Trooper White noted there was not much traffic on the road at this time. (R.R. Vol. 3, pg. 115). Appellant then stated he veered off the road and had the wreck. (R.R. Vol. 3, pg. 116). Trooper White observed that Appellant tended to lean or sit on the guardrail, as he was having trouble maintaining his balance. (R.R. Vol. 3, pg. 116). Appellant had a small burn on the bottom of his chin, an injury common from airbag deployment. (R.R. Vol. 3, pg. 116). On cross examination, Trooper White testified that Appellant was not wearing his

seatbelt and, upon impact, his head imprinted the windshield above the steering wheel. (R.R. Vol. 3, pg. 131). Appellant advised Trooper White he had not been drinking, but he had taken Lithium and an antidepressant. (R.R. Vol. 3, pg. 117). Due to his lack of coordination and slurred speech, Trooper White was concerned Appellant may have been intoxicated on something other than alcohol. (R.R. Vol. 3, pg. 117). Lifenet EMS arrived and carried Appellant to the hospital. (R.R. Vol. 3, pg. 117). Trooper White requested Trooper Wayne Johnson to report to the hospital to observe the driver, perform field sobriety tests, and make sure the driver did not leave the hospital prior to their arrival. (R.R. Vol. 3, pgs. 121-122). Trooper White arrived at the conclusion of the reading of Appellant's statutory warnings, in time to hear Appellant consent to a blood draw. (R.R. Vol. 3, pg. 122). After Appellant's blood was drawn, Trooper White transported Appellant to the Cass County jail and read him the Miranda warnings. (R.R. Vol. 3, pgs. 126-127). Trooper White then interviewed Appellant. (R.R. Vol. 3, pgs. 127-128). Appellant admitted to operating a vehicle. (R.R. Vol. 3, pg. 127). Appellant stated he was taking Wellbutrin and "a little pink pill for sleep." (R.R. Vol. 3, pg. 128). He stated the last time he took those medicines was last night. (R.R. Vol. 3, pg. 128).

Michelle Melo testified that she is a forensic scientist with the DPS Crime Lab in Austin. (R.R. Vol. 3, pg. 141). Melo was certified to testify as an expert on the effects of drugs and alcohol on the body and as to the presence of drugs

in blood.  (R.R. Vol. 3, pg. 141).  Melo testified that she received a blood kit from Trooper White on September 11, 2012.  (R.R. Vol. 3, pg. 141).  She testified that Sarah Martin did the initial analysis of the blood, which all of the samples go through upon receipt at the laboratory.  (R.R. Vol. 3, pg. 145).  The initial screening process helps narrow down what confirmations they will do, by analyzing for seven drug classes.  (R.R. Vol. 3, pg. 145).  The initial screening came back negative.  (R.R. Vol. 3, pg. 147).  The blood was then given to Melo for further testing, based on the officer's suspected drugs.  (R.R. Vol. 3, pg. 147).  That analysis is performed using liquid chromatography mass spectrometry.  (R.R. Vol. 3, pg. 147).  The test detected citalopram, hydroxyzine, and zolpidem in the blood sample, with no quantitation performed.  (R.R. Vol. 3, pg. 149).  Melo testified that all of these drugs are of the type that could potentially affect a person within therapeutic levels.  (R.R. Vol. 3, pg. 150).  Citalopram is an antidepressant with side effects such as drowsiness and sleepiness, but also insomnia.  (R.R. Vol. 3, pg. 150).  Hydroxyzine can be used to treat anxiety, which can cause drowsiness.  (R.R. Vol. 3, pg. 150).  Zolpidem is prescribed solely to make a person fall asleep and stay asleep.  (R.R. Vol. 3, pgs. 150-151).  Melo testified that taking all three of these pills together can enhance each drug's cumulative effect.  (R.R. Vol. 3, pg. 151).

On cross examination, Appellant clarified that Zolpidem is Ambien, which is a prescription medication that physicians use for insomnia in a patient.  (R.R.

Vol. 3, pg. 152). Melo explained the difference between immediate release, when all the contents in a pill are released at once, versus controlled release, when the pill dissolves slower so the chemicals will stay in your system longer. (R.R. Vol. 3, pgs. 152-153). Melo testified that indications on the controlled release label say you should not do anything that requires use of your normal faculties the next day. (R.R. Vol. 3, pg. 153). Controlled release Ambien can impair a person's mental alertness the following day. (R.R. Vol. 3, pg. 154). Melo described "sleepwalking," with regards to people using Ambien, when people will do things throughout the night that they have no recollection of the next morning, such as walking, eating, and talking. (R.R. Vol. 3, pg. 156). She said there have been reported cases of sleep driving as well, among a small percentage of Ambien takers. (R.R. Vol. 3, pg. 157).

Trooper Wayne Johnson testified that on August 14, 2012 he was employed as a trooper with the Texas Department of Public Safety. (R.R. Vol. 3, pg. 168). Johnson received a request from Trooper Eric White to respond to Atlanta Memorial Hospital to visit with the driver from the crash and investigate for possible intoxication. (R.R. Vol. 3, pgs. 168-169). Johnson arrived at the hospital and began to question Appellant about events leading up to the crash. (R.R. Vol. 3, pgs. 169-170). Johnson inquired about any medications Appellant had taken, and Appellant advised he had not had any. (R.R. Vol. 3, pg. 170). Later in their conversation, Appellant stated he had taken Ambien 24 hours prior

-17-

and Wellbutrin two days prior. (R.R. Vol. 3, pg. 171). Johnson initiated field sobriety testing on Appellant, beginning with the Horizontal Gaze Nystagmus test. (R.R. Vol. 3, pg. 172). Johnson first checked to make sure that Appellant was a good candidate, meaning he did not have any sort of head trauma or brain injury, by checking for equal pupil size and equal tracking. (R.R. Vol. 3, pg. 173-174). Johnson did determine Appellant was a good candidate. (R.R. Vol. 3, pg. 174). Johnson observed six out of six clues on the HGN test. (R.R. Vol. 3, pg. 176). Johnson again questioned Appellant about any medications he may have taken. (R.R. Vol. 3, pg. 176). Appellant advised Johnson he took Wellbutrin and Lexapro that morning. (R.R. Vol. 3, pg. 176). Johnson then chose to perform alternate field sobriety tests on Appellant due to the fact that he was in the emergency room being treated for possible injuries. (R.R. Vol. 3, pg. 176-177). Johnson asked Appellant to recite the alphabet, starting with the letter M and ending with the letter W. (R.R. Vol. 3, pg. 177). Appellant appeared confused, and performed poorly on the test. (R.R. Vol. 3, pg. 177). He started with W, went back to M, skipped multiple letters and ended with Z. (R.R. Vol. 3, pg. 177). After that test, Johnson and Appellant discussed how Appellant was in college at Texas A&M getting his undergraduate degree. (R.R. Vol. 3, pgs. 177-178). Johnson next asked Appellant to count backwards from 55 to 32. (R.R. Vol. 3, pg. 178). Appellant appeared to understand what he was being asked to do, but performed very poorly on the test, skipping around to different numbers and

pausing several times. (R.R. Vol. 3, pg. 178-179). The next test Johnson had him perform was the finger count test. (R.R. Vol. 3, pg. 179). Johnson showed Appellant how to do this test multiple times, but Appellant was unable to complete the test correctly. (R.R. Vol. 3, pg. 179). Johnson and Appellant continued to converse, and at some point, Appellant advised Johnson that he took the Ambien at 9:00 p.m. the night before. (R.R. Vol. 3, pg. 180). He had taken two Wellbutrin and a Lexapro that morning. (R.R. Vol. 3, pg. 180). Johnson explained to Appellant that medications can cause you to be intoxicated or impaired, and Appellant agreed. (R.R. Vol. 3, pg. 181). Johnson then read the statutory warning form to Appellant, requesting a blood sample. (R.R. Vol. 3, pg. 181). Appellant consented to give a blood sample, without any resistance. (R.R. Vol. 3, pgs. 181-182). Appellant also signed a consent form. (R.R. Vol. 3, pg. 182).

The State then offered State's Exhibit 13, a written stipulation of evidence, entered into between the prosecutor, defense counsel, and the defendant, which stated that the two prior convictions alleged in the indictment were true and final convictions. There was no objection from the defense. (R.R. Vol. 3, pg. 191) The State then rested its case-in-chief. (R.R. Vol. 3, pg. 192).

Appellant called Dr. Karen Reinersten, a psychiatrist employed with Riverview Clinic, to testify on his behalf. (R.R. Vol. 4, pg. 7). Reinsten testified that she treated Appellant for about fifteen minutes on March 19, 2014 for

purposes of a medication evaluation.  (R.R. Vol. 4, pg. 8).  She renewed his prescriptions for Wellbutrin, Lexapro, and Lithium.  (R.R. Vol. 4, pg. 8).  Reinersten also testified that she reviewed a medication sheet which is maintained by Riverview, and Appellant was prescribed Ambien on January 24, 2012 and May 24, 2012.  (R.R. Vol. 4, pg. 9).  On July 23, 2012, the Ambien was discontinued, and Ambien CR was prescribed.  (R.R. Vol. 4, pg. 9).  As Reinersten continued to testify about further notations in the record, State's counsel objected that the proper predicate had not been laid and as to hearsay.  (R.R. Vol. 4, pg. 11).  The court ruled that the "progress notes" and "medication log order" could be admissible if the proper business records predicate were laid.  (R.R. Vol. 4, pgs. 11-12).  There was a document entitled "interpretation of diagnosis" which was a report of Dr. Gregory Atchison.  (R.R. Vol. 4, pg. 12).  The Court sustained the objection as to the report due to the report being hearsay within hearsay, containing an expert opinion of an expert who did not appear before the Court, and he was not tendered as an expert witness by defense counsel. (R.R. Vol. 4, pgs. 12-13).  The report was excluded.  (R.R. Vol. 4, pg. 13).  Defense counsel proceeded to lay the proper business records predicate for the "progress notes" and "medication log order," and those documents were admitted without objection. (R.R. Vol. 4, pgs. 13-14).

Appellant testified in his own defense.  Appellant testified that he is disabled, as he suffers from mood disorders, bipolar, and panic attacks.  (R.R.

Vol. 4, pg. 19). Appellant stated in the past he suffered from alcoholism, but he consumed his last alcoholic beverage in December of 2009, when he received his second DUI. (R.R. Vol. 4, pgs. 20-21). Appellant testified that he takes Lithium for mood stabilization and Wellbutrin and Lexapro as antidepressants. (R.R. Vol. 4, pgs. 23-24). He was prescribed Ambien controlled release in July 2012 and took it up until the accident on August 14, 2012. (R.R. Vol. 4, pg. 24-25). Appellant stated he typically took the Ambien around 10:00 p.m. (R.R. Vol. 4, pg. 25). On a typical night in July or August of 2012, Appellant testified he would normally sleep six hours. (R.R. Vol. 4, pg. 27). Appellant acknowledged there were warnings about the Ambien either on the bottle or given to him with his prescription and that he read the warnings when he picked up his prescription. (R.R. Vol. 4, pgs. 28-29). Appellant claimed he did not remember anything that occurred on August 14, 2012 until he landed in the creek. (R.R. Vol. 4, pg. 30). Appellant did not remember speaking to Trooper White or EMS personnel at the scene. (R.R. Vol. 4, pg. 32). He did not remember being transported to the hospital. (R.R. Vol. 4, pg. 32). Appellant did not remember performing the tests for Trooper Johnson, but he does remember his blood being drawn. (R.R. Vol. 4, pgs. 32-33).

On cross-examination, State's counsel impeached Appellant's testimony that he had not consumed any alcoholic beverages since his second DWI arrest, which actually occurred in February 2010. (R.R. Vol. 4, pgs. 39-42). Appellant

-21-

admitted to being arrested in Marion County, after being placed on probation for his second DWI, for evading arrest with a vehicle, DWI, and other charges. (R.R. Vol. 4, pg. 40). Appellant testified he did not recall drinking that night, but he was not taking anything like Ambien. (R.R. Vol. 4, pgs. 40-41). Subsequent to that arrest, Appellant also admitted to pleading guilty in Miller County, Arkansas to public intoxication, disorderly conduct, obstructing governmental operations, and loitering. (R.R. Vol. 4, pg. 41). Appellant testified that on two separate occasions after he pled to the DWI second, he was drinking and driving. (R.R. Vol. 4, pg. 42).

Appellant further testified on cross-examination that the reason he only remembers bits and pieces of the crash is solely attributed to the Ambien, and not his mental capabilities. (R.R. Vol. 4, pg. 43). He testified that what made him drowsy was the Ambien, that he was sleep driving. (R.R. Vol. 4, pg. 51).

Both sides rested and closed on July 30, 2014. (R.R. Vol. 4, pg. 53). The Court's charge was read to the jury. (R.R. Vol.4, pgs. 56-63). Closing arguments were presented by both the State and the defense, after which the jury retired to deliberate. (R.R. Vol. 4, pgs. 63-76). The jury returned after 38 minutes of deliberation with a "guilty" verdict. (R.R. Vol. 4, pg. 77).

## SUMMARY OF THE ARGUMENT

**Issue 1: The evidence introduced at trial was legally sufficient to establish that Appellant was intoxicated at the time he operated a motor vehicle, thereby supporting the jury's guilty verdict.**

The Court shall utilize the legal sufficiency standard set out in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Under that standard, all evidence is to be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements beyond a reasonable doubt. *Jackson* at 318-19; *Acosta v. State*, 429 S.W.3d 621, 624-25 (Tex. Crim. App. 2014). In viewing all the evidence introduced at trial in the light most favorable to the verdict, it is clear that the evidence was legally sufficient to support the jury's verdict.

**Issue 2: Appellant expressly consented to a blood draw, therefore, the trial court did not abuse its discretion in denying Appellant's Motion to Suppress Blood Analysis.**

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion and should only be overturned if it is outside the zone of reasonable disagreement. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Martinez v. State,* 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). Whether a person's consent was voluntarily given shall be judged by the trial court based on the totality of the circumstances. *Johnson v. State,* 68 S.W.3d 644, 653 (Tex. Crim. App. 2002); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). In applying the factors identified in *State v. $ 217,590.00 in United States*

*Currency,* 18 S.W.3d 631, 634 (Tex. 2000), to the evidence presented at the suppression hearing, it is clear that the State met its burden to prove by clear and convincing evidence that Appellant's consent to give blood was freely and voluntarily given.

**Issue 3:** **The jury may be informed of an Appellant's stipulations to two prior DWI convictions, as proof of those priors is a jurisdictional element of the offense.**

The Court of Criminal Appeals has held in numerous cases that proof of the two prior convictions is a jurisdictional element of the offense that must be proven in order to obtain a conviction for the offense of felony DWI. *Hollen v. State*, 117 S.W.3d 798, 801 (Tex. Crim. App. 2003); *Barfield v. State,* 63 S.W.3d 446, 448 (Tex. Crim. App. 2001); *Tamez v. State*, 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000). Additionally, the Court has held that the jury may be informed of that stipulation and any written stipulation may be offered into evidence. *Hollen* at 801.

**Issue 4:** **Appellant failed to argue any basis for the admissibility of the excluded "interpretation of diagnosis," therefore, he has not preserved this issue for review.**

In order to preserve an argument regarding the exclusion of evidence, the proponent of the evidence must have attempted to introduce the evidence at trial, and the trial court must have excluded the evidence. *See* TEX. R. APP. P. 33.1(a), TEX. R. EVID. 103(a)(2), *Basham v. State,* 608 S.W.2d 677, 679 (Tex. Crim. App. 1980). Additionally, the proponent must have presented to the judge

an argument as to why the evidence was admissible. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Failure to present an argument to the trial court in support of admission of the excluded evidence waives the argument on appeal. *Id.* at 176-179. Appellant failed to present any argument as to why the excluded "interpretation of diagnosis" was admissible, and further failed to make an offer of proof. Therefore, he has failed to preserve this error for appeal.

**Issue 1:** **The evidence introduced at trial was legally sufficient to establish that Appellant was intoxicated at the time he operated a motor vehicle, thereby supporting the jury's guilty verdict.**

### I. Standard of Review

The Texas Court of Criminal Appeals has held that in evaluating whether there is sufficient evidence to support a jury verdict, the Court shall utilize the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010). Under that standard, all evidence is to be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson* at 318-19; *Acosta v. State,* 429 S.W.3d 621, 624-25 (Tex. Crim. App. 2014); *Adames v. State*, 353 S.W.3d 854, 859-60 (Tex. Crim. App. 2011); *Brooks*, 323 S.W.3d at 912.

Evidentiary sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, Appellant is guilty of Driving While Intoxicated – Subsequent Offense if he (1) operated (2) a motor vehicle (3) in a public place (4) while intoxicated, and (5) has been previously convicted two times of an offense relating to the operating of a motor vehicle while intoxicated. Driving While Intoxicated is a strict liability crime. *Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013) Therefore,

there is no requirement to prove a specific mental state (e.g., intentionally, knowingly, or recklessly intending to operate a motor vehicle while intoxicated). *Id.*

## II. Law & Applicability

There is sufficient evidence to support the jury's verdict that Appellant operated a motor vehicle in a public place while intoxicated, and that he had been previously convicted two times of an offense relating to the operating of a motor vehicle while intoxicated.

It is undisputed that Appellant was driving the car. Both Trooper Eric White and Appellant, himself, identified Appellant as the driver of the vehicle which crashed FM 3129 in Cass County, Texas on August 14, 2012. (R.R. Vol. 3, pgs. 110, 114). It is also undisputed that Appellant was previously convicted two times of an offense relating to the operating of a motor vehicle while intoxicated, as Appellant stipulated to this fact. (R.R. Vol. 3, pg. 191, State's Exhibit 13).

There is more than sufficient evidence that Appellant was intoxicated at the time of driving. Joseph Melder testified that he observed Appellant's car swerve a couple of times, and then veer off the road into the creek. (R.R. Vol. 3, pg. 104). Trooper White observed Appellant supporting himself on the guardrail due to having balance issues. (R.R. Vol. 3, pg. 116). He also noted Appellant to have slurred speech and coordination issues. (R.R. Vol. 3, pg. 117). Appellant

-27-

admitted he had taken Lithium, Wellbutrin, and "a little pink pill for sleep." (R.R. Vol. 3, pg. 117, 128). Michelle Melo testified that a blood analysis of Appellant's blood tested positive for citalopram, hydroxyzine, and zolpidem. (R.R. Vol. 3, pg. 149). All three of these pills can cause drowsiness, and zolpidem's sole purpose is to make a person fall asleep. (R.R. Vol. 3, pgs. 150-151). Trooper Wayne Johnson testified that he performed field sobriety tests on Appellant, and Appellant performed poorly on all tests. (R.R. Vol. 3, pgs. 176-179). Appellant told Johnson that he had taken Wellbutrin, Lexapro, and Ambien. (R.R. Vol. 3, pg. 176, 180). Appellant testified that he did not remember anything that occurred on August 14, 2012 until he landed in the creek. (R.R. Vol. 4, pg. 30). He attributed his lack of memory to the Ambien, and claimed that he was sleep driving. (R.R. Vol. 4, pgs. 43, 51).

Viewing all this evidence in the light most favorable to the verdict, it is clear that any rational trier of fact could have found the essential elements of the offense of Driving While Intoxicated – Subsequent Offense beyond a reasonable doubt.

**Issue 2:** **Appellant expressly consented to a blood draw, therefore, the trial court did not abuse its discretion in denying Appellant's Motion to Suppress Blood Analysis.**

### I.     Standard of Review

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion, and is to be overturned only if it is outside the zone of reasonable

disagreement. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Martinez v. State,* 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). The appellate court shall apply a bifurcated standard of review, giving almost complete deference to the trial court's determination of historical facts and mixed questions of law and fact and that rely upon an assessment of the credibility and demeanor of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Johnson,* 414 S.W.3d at 192; *Martinez*, 348 S.W.3d at 923.

## II.  Law & Applicability

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)(citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). In order to be valid, consent must "not be coerced, by explicit or implicit means, by implied threat or coerced force." *Schneckloth,* 412 U.S. at 228. "Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given." *Carmouche*, 10 S.W.3d at 331. The trial court shall look to the totality of the circumstances surrounding the consent in determining whether that consent was given voluntarily. *Johnson v. State,* 68

S.W.3d 644, 653 (Tex. Crim. App. 2002); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Again, almost total deference shall be given to a trial court's findings of fact, especially when those findings are based on an evaluation of credibility and demeanor of a witness. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Martinez v. State,* 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

Factors to be examined in determining whether an accused freely and voluntarily consented include, but are not limited to the following:

> (1) whether, and to what extent, officers exhibited a show of force, including a display of weapons or other intimidating tactics; (2) whether the arresting officers engaged in flagrant misconduct; (3) whether the police threatened to obtain a search warrant, or whether the police claimed a right to search; (4) whether the police administered *Miranda* warnings; (5) whether the arrest was made in order to obtain consent; 6) whether the accused knew that he could refuse to allow a search; (7) whether consent was first offered by the accused or was in response to a police request; and (8) the accused's age, education, intelligence, and physical condition.

*See Frierson v. State*, 839 S.W.2d 841, 851 (Tex. App.—Dallas 1992, pet. ref'd); *see also State v. $ 217,590.00 in United States Currency*, 18 S.W.3d 631, 634 (Tex. 2000) (compiling list of factors from various cases).

In applying these factors to the evidence presented at the suppression hearing, it is clear that the State met its burden to prove by clear and convincing evidence that Appellant's consent to give blood was freely and voluntarily given. There was no evidence presented at the hearing that either Trooper Wayne

Johnson or Trooper Eric White exhibited a show of force or displayed any weapons. To the contrary, Johnson engaged in conversation with Appellant regarding the events leading up to the crash, where he was travelling, and what medications he had been taking. (R.R. Vol. 2, pgs. 22-23). They also discussed that Appellant was an undergraduate student at Texas A&M. (R.R. Vol. 2, pg. 27). There was no indication that Appellant was physically abused or threatened into giving consent or evidence of violence or physical coercion of any kind. *See Lackey v. State,* 638 S.W.2d 439, 451 (Tex. Crim. App. 1982)(stating that absence of violence and physical coercion is indicative that consent was given voluntarily). There was no evidence of flagrant misconduct by Trooper Johnson or Trooper White. There was no testimony that Trooper Johnson or Trooper White threatened to obtain a search warrant if Appellant did not consent to the blood draw. While Trooper Johnson did not read Appellant his *Miranda* warnings at this time, he did read the DIC-24 statutory warning form to Appellant which advised Appellant of his right to refuse consent but admonished Appellant of the consequences of that refusal. (R.R. Vol. 2, pg. 30). Additionally, after consenting to the blood draw, Trooper Johnson had Appellant sign a consent form acknowledging that he was giving his consent to the blood draw. (R.R. Vol. 2, pg. 31, State's Exhibit 1). At no time did Appellant ever resist the nurse's attempt to draw his blood, tending to show that Appellant freely and voluntarily acquiesced to the blood draw. (R.R. Vol. 2, pg. 32).

Viewing all of this evidence in the light most favorable to the trial court's ruling that there was "clear and convincing evidence by a totality of the circumstances that there was actual consent to the blood draw," and assuming that the trial court made implicit findings of fact that support that ruling, *see State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), this Court should find that the trial court did not abuse its discretion in denying Appellant's Motion to Suppress the Blood Analysis.

**Issue 3:** **The jury may be informed of an Appellant's stipulations to two prior DWI convictions, as proof of those priors is a jurisdictional element of the offense.**

### I.     Preservation of Error

Three steps are necessary to preserve error regarding evidence admitted or placed before the jury:  a specific and timely objection, a request for an instruction to disregard, and a motion for mistrial.  *See Fuller v. State,* 827 S.W.2d 919, 926 (Tex. Crim. App. 1992).  To preserve error, counsel must obtain an adverse ruling, either on the objection, the request that the jury be instructed to disregard, or the motion for mistrial.  *Id.*  Courts hold the sequence of those steps is not so critical as is the fact that the movant persists in seeking all available relief from the trial court, until the trial court effectively denies relief to which the movant is entitled.  *Id.*

In this case, Appellant never objected to the admissibility of the stipulations in trial.  The only mention Appellant ever made was at the pretrial hearing on

Appellant's Motion in Limine, with regards to the request that the State not be able to mention "any evidence the defendant committed an offense other than the offense currently being tried." (R.R. Vol. 2, pg. 10. The State responded that they were required to prove up the two prior DWI convictions for jurisdictional purposes, to which Appellant responded, "Your Honor, we'll stipulate to those two prior DWI convictions, so there's no necessity to bring that up in front of the jury." (R.R. Vol. 2, pg. 10). The trial court disagreed, stating that "the stipulation itself has to be offered in order for the State to have sufficient evidence to prove its case…they have to present to the jury the fact of the two prior convictions, even with the stipulation." (R.R. Vol. 2, pg. 10). When Appellant was arraigned in the presence of the jury, the two jurisdictional priors were read, and there was no objection from Appellant. (R.R. Vol. 3, pg. 95). After all State's witnesses testified, the State offered Exhibit 13, the written stipulation that Appellant had been previously convicted two times of an offense relating to the operating of a motor vehicle while intoxicated, which was signed by all parties. (R.R. Vol. 3, pg. 191). Appellant did not object to the Exhibit, and Appellant further failed to object when the State read the stipulation into the record. (R.R. Vol. 3, pgs. 191-192). Due to Appellant's failure to object, this issue has not been preserved for review.

## II. Law & Applicability

Even if this issue were preserved for review, the law is clear in *Hollen v. State*, 117 S.W.3d 798, 801 (Tex. Crim. App. 2003), that the jury may be

informed of a stipulation and any written stipulation may be offered into evidence before the jury. The Court in *Hollen,* citing its prior holdings in *Tamez v. State*, 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000) and *Barfield v. State*, 63 S.W.3d 446, 448 (Tex. Crim. App. 2001), states "we have reiterated that the two prior convictions are jurisdictional elements that must be proven to obtain a conviction for the offense of felony DWI." In this case, proof of Appellant's two prior convictions was necessary to prove the jurisdictional elements for the offense of felony DWI, and it was not error for the trial court to permit the State to admit the stipulation into evidence before the jury.

**Issue 4:** **Appellant failed to argue any basis for the admissibility of the excluded "interpretation of diagnosis," therefore, he has not preserved this issue for review.**

**I.     Preservation of Error**

A trial court's order excluding evidence is to be reviewed under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). In order to successfully argue on appeal that the trial court erred in excluding certain evidence, an appellant must demonstrate that (1) he preserved the argument by offering the evidence during the trial and by making the trial court aware of the substance of the evidence and the basis for its admission, *see* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(2), *Basham v. State,* 608 S.W.2d 677, 679 (Tex. Crim. App. 1980); the trial court erred in ruling the evidence inadmissible, *see Willover* 70 S.W.3d at 845; and (3) the trial court's exclusion of

-34-

the evidence was harmful to appellant's case, *see* TEX. R. APP. P. 44.2; *Ray v. State,* 178 S.W.3d 833, 835-36 (Tex. Crim. App. 2005).

In order to preserve an argument regarding the exclusion of evidence, the proponent of the evidence must have actually attempted to introduce the evidence during trial, and the trial court must have excluded the evidence. *See* TEX. R. APP. P. 33.1(a), TEX. R. EVID. 103(a)(2), *Basham,* 608 S.W.2d at 679. The proponent of the evidence must also have made the substance of the offered evidence known to the court through either a bill of exception or offer of proof, unless the substance is apparent from the context in which the evidence was offered. *See* TEX. R. EVID. 103(a)(2). Failure to present a particular argument to the trial court in support of the admission of excluded evidence waives the argument on appeal. *Reyna v. State,* 168 S.W.3d 173, 176-179 (Tex. Crim. App. 2005); *Rodriguez v. State*, 749 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1988, pet. ref'd). It is not enough to tell the judge that evidence is admissible. *Reyna,* 168 S.W.3d at 177. The proponent of the evidence must have told the judge *why* the evidence was admissible. *Id.* (emphasis added).

In this case, Appellant sought to admit a document entitled "interpretation of diagnosis," which was a report made by a Dr. Gregory Atchison dated December 20, 2012. (R.R. Vol. 4, pg. 12). The State objected on the grounds that neither the proper business records predicate had been laid and as to hearsay. (R.R. Vol. 4, pg. 11). Appellant did not present an argument to the trial

court as to why the document was admissible, and further failed to make an offer of proof. (R.R. Vol. 4, pg. 13). Because Appellant failed to include any specificity as to the substance of the offered evidence, there is no way to know from the record whether the exclusion was harmful to Appellant's case. Appellant has failed to preserve this error for appellate review.

## PRAYER

**WHEREFORE,** premises considered, Appellee respectfully requests that the adjudication of Appellant and corresponding sentence imposed by the trial court be in all things **AFFIRMED.**

Respectfully submitted,

*Courtney Shelton*

Courtney A. Shelton
Cass Co. Asst. Criminal District Attorney
Texas Bar No. 24043354
Post Office Box 839
Linden, Texas 75563
Telephone: 903.756.7541
Facsimile: 903.756.3210
cholland.assistantda@casscountytx.org

Attorney for Appellee,
The State of Texas

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Brief of Appellee was forwarded via First Class mail on February 19, 2015, to the following attorneys of record and interested parties:

**Appellant**
Christopher Vujovich
TDC # 01944642
East Texas Treatment Facility
900 Industrial Drive
Henderson, Texas  75652

**Appellant's Attorney**
Edwin Buckner
P.O. Box 629
Linden, Texas  75563

**Trial Court Judge**
Hon. Donald Dowd
County Court at Law Judge,
Sitting for the 5th Judicial District Court
P.O. Box 510
Linden, Texas  75563

_Courtney Shelton_
Courtney H. Shelton

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this reply (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 6,193.

*Courtney Shelton*
Courtney H. Shelton